# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
JAN 16 2020
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 5:20 CM __6__
)
One LG Cellular Telephone )
SN: 904CYNL0802191 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Western___ District of ___Arkansas, Fayetteville Div.___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession With Intent/Distribution of Controlled Substances |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
See attached Affidavit of HSI SA Jeffrey Pryor.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey Pryor, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/16/2020

*Judge's signature*

City and state: Fayetteville, Arkansas           Hon. Erin L. Wiedemann, Chief U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is described as a black LG cellular telephone bearing serial number: 904CYNL0802191, which is also depicted in the below photographs. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.





1

## ATTACHMENT B

### *INFORMATION TO BE SEIZED BY THE GOVERNMENT*

All records and information on the device described in Attachment A that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843, 846, 856, and 18 U.S.C. § 1956, including:

a. All internet browsing history, as well as telephonic, text, and electronic mail messages between DaJohn ALEXANDER and other persons, known and unknown, regarding the unlawful acquisition, disposition, and/or transfer of controlled substances or controlled substance analogues; information regarding the payment(s) for the controlled substances or controlled substance analogues; or the acquisition, transfer, or concealment of assets, money, or proceeds by any means;

b. All bank records, wire transfer records, bank statements, tax records, tax returns, financial records and notes, checks, credit card bills, account information, and other financial records;

c. Correspondence, notations, logs, receipts, journals, records, and other documents noting the price, quantity and/or times when controlled substances or controlled substance analogues were obtained and/or sold;

d. Any and all address books, telephone records, telephone books, date books, calendars, payment records, and telephone bills and documents and other items reflecting names, addresses, and telephone numbers;

e. Records, documents, and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds from the illegal sale of controlled substances or controlled substance analogues and related activities;

f. Records of off-site locations to store records or controlled substances, including safe deposit keys, records, receipts, rental agreements for storage facilities;

g. Mementos, including photographs, and other historical keepsake items which document the association of co-conspirators, with each other and other suspected associates involved in the illegal sale of controlled substances and controlled substance analogues and money launders as well property or assets purchased with illegal proceeds;

h. Lists of customers and related identifying information;

i. Types, amounts, and prices of controlled substances and controlled substance analogues trafficked, as well as dates, places, and amounts of specific transactions;

j. Text messages and other communications stored on the electronic devices relating to the trafficking of controlled substances and controlled substance analogues, money laundering, or identification of co-conspirators;

2

k. Any information related to the sources of drugs (including names, addresses, phone numbers, or any other identifying information);

l. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, deleted, such as logs, phonebooks, photographs, saved usernames and passwords, documents, spreadsheets, and browsing history;

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A LG CELLULAR TELEPHONE | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jeffrey Pryor, Special Agent with the Homeland Security Investigations (HSI), a component of the Department of Homeland Security, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is being submitted in support of an application for a search warrant for evidence believed to be contained in a black LG cellular telephone bearing serial number: 904CYNL0802191, hereinafter as the "**SUBJECT TELEPHONE**" and more fully described in Attachment A. The items to be seized are described herein and in Attachment B. Because this Affidavit is being submitted for the limited purpose of establishing probable cause to search the **SUBJECT TELEPHONE**, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

2. I have been employed as a special agent (SA) with Homeland Security Investigations (HSI), a component of U.S. Immigration and Customs Enforcement since May 2007. Prior to being employed as a special agent, I was employed as a Border Patrol agent with the United States Border Patrol from September 2001 until May 2007. As such, I am a law enforcement officer within the meaning of Section 115(c)(1) of Title 18 United States Code, who is authorized by law or Government agency to engage in or

supervise the prevention, detection, investigation and/or prosecution of any violation of Federal criminal law, to include violations of Title 21, United States Codes, Sections 841(a)(1) and 846.

3. In connection with my official duties, I investigate criminal violations of the Federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848; money laundering laws, including Title 18, United States Code, Sections 1956 and 1957; and firearm laws, including Title 18, United States Code, Sections 922 and 924. I have also been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking. I have participated in investigations resulting in the arrest of numerous drug trafficking suspects and in the seizure of substantial quantities of illegal narcotics and proceeds of narcotics sales.

4. Regarding the business of illegal narcotics trafficking, I am also aware of the following things based upon my training and experience:

> i. That drug dealers very often place assets, including accounts at financial institutions, in names other than their own to avoid detection by government or other law enforcement agencies.
>
> ii. That even though these assets are in other names, the drug dealers continue to use these assets and exercise dominion and control over them.
>
> iii. That drug dealers frequently maintain on-hand amounts of United States currency in order to maintain and finance their ongoing illegal drug business.

iv. That drug dealers often maintain books, records, receipts, notes, ledgers, computers, computer disks, tickets, money orders, cashier's checks, wire transfer receipts, and similar drug related financial documents and records pertaining to the transportation, ordering, sale and distribution of illegal drugs. Furthermore, such documents are often written in code.

v. That drug dealers commonly front (provide illegal drugs on consignment) to their clients and often keep the aforementioned items so they can account for their drugs, the money owed for these drugs, and who has or owes for these drugs.

vi. That the aforementioned books, records, receipts, notes, ledgers, tickets, money orders, cashier's checks, and similar financial documents and records, including computers, computer disks, diskettes, and hard drives,

and other media are maintained where the drug dealers have ready access to them.

vii. That it is common for drug dealers to conceal contraband, large amounts of currency, precious metals, jewelry, address lists, telephone lists, proceeds of drug sales, and records of drug transactions in secure locations within their residences, yards, garages, offices, businesses, automobiles, safes, safe deposit boxes, and obscure locations known only to them, i.e., mail drops, mini storage warehouses, etc., for ready access and to conceal the same from law enforcement authorities.

    viii. That persons involved in illegal drug trafficking conceal in their residences, yards, offices, businesses, safes, garages, storage buildings, vehicles, safe deposit boxes, and obscure locations, caches of drugs, large amounts of currency, weapons, financial instruments, precious metals, jewelry, and other items of value and/or proceeds from drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of money made from engaging in illegal drug trafficking activities.

    ix. That drug dealers often purchase expensive vehicles, businesses and residences with the proceeds from their drug transactions. Also, that drug dealers frequently change vehicles and register vehicles in other names to avoid detection by law enforcement personnel.

    x. That drug dealers amass large proceeds from the sale of illegal drugs, they often attempt to legitimize their profits and maintain evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money derived from their illegal drug distribution activities.

    xi. That to accomplish these goals, drug dealers utilize, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, business fronts, telephones, cellular telephones, facsimile machines, digital and various paging devices, and two-way radio systems. Furthermore, drug dealers

frequently change telephone numbers, paging devices and telephone instruments.

xii. That drug dealers commonly maintain addresses and telephone numbers in books or papers which reflect names, alias names, addresses, and telephone numbers for their associates in their illegal drug trafficking.

xiii. That drug dealers take or cause to be taken photographs, video and

xiv. digital audiotapes of themselves, their associates, their property, and their illegal products. Furthermore, these drug dealers often maintain these photographs, video and audiotapes in their residences, offices, safes, garages, storage buildings, vehicles and safe deposit boxes.

xv. That drug dealers frequently keep paraphernalia for packaging, diluting,

xvi. weighing, and distributing the illegal drugs. Furthermore, this paraphernalia includes, but is not limited to, scales, plastic bags, diluting agents, boxes, trash compactors, heat sealers, and sealing tape.

xvii. That the courts have recognized that unexplained wealth is probative

xviii. evidence of crimes motivated by greed, and in particular, illegal trafficking in controlled substances.

xix. That drug traffickers very often possess firearms and other weapons for

xx. the purpose of protecting their drug trafficking enterprises from the efforts

xxi. of law enforcement authorities as well as from persons who might attempt to steal any drugs or money possessed by the drug traffickers.

xxii. Affiant is aware that drug traffickers often maintain extra residences as

stash houses, meeting locations, and temporary housing for drug associates. Furthermore, these residences are frequently rented, purchased or titled in others' names even though the residences remain in the control of the drug traffickers.

xxiii. In the Affiant's experience as an investigator, it has been found that illegal drug trafficking is frequently a continuing activity over months and even years. Illegal drug traffickers typically will obtain and distribute controlled substances on a regular basis much as a distributor of a legitimate commodity would purchase stock for sale, and similarly, such drug traffickers will have an inventory which will fluctuate in size depending upon the demand for the product. The Affiant expects the drug trafficker to keep records of his illegal activities for a period extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which he might still be owed money or might owe someone else money. Drug traffickers frequently use third parties to transport shipments of illegal drugs and cash proceeds from the sale of illegal drugs. These third parties use a variety of methods to transport shipments of illegal drugs and cash, including automobiles.

5. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of HSI and other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was

made, the information was provided by another HSI agent or law enforcement officer. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. In addition, this affidavit is based on information from the following sources:

  i. Oral and written reports about this and other investigations which I have received from federal agents and local law enforcement;
  ii. Physical surveillance conducted by federal agents and task force officers (TFO), or local law enforcement agencies, the details of which have been reported to me either directly or indirectly;
  iii. A review of telephone toll records, and subscriber information;
  iv. Public records;
  v. A review of audio recordings resulting from consensually monitored meetings involving a reliable confidential informant and the target of the investigation;
  vi. Information provided by reliable confidential informant; and
  vii. My training and experience as a task force officer and the training and experience of other law enforcement officials, including other HSI special agents and task force officers.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that the property described in Attachment A has been used to commit violations of 21 U.S.C.§ 841(a)(1), and 846. There is also probable cause to believe that the items to be seized described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of additional individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

7.     On June 26, 2019, Benton County Sheriff's Office Deputy C. Robbins and Deputy S. Deppner arrested DaJohn ALEXANDER following a traffic stop in Bentonville, Arkansas that resulted in the seizure of approximately 4.2 pounds of methamphetamine. According to Deputy Robbins' report, he was observing cross traffic on Regional Avenue near Tower Drive, which is geographically near the Northwest Arkansas Regional Airport. Deputy Robbins stated that the headlights on his marked patrol vehicle were illuminating the roadway. Deputy Robbins said that a white passenger vehicle passed his stationary location and he observed two passengers in the vehicle. Deputy Robbins began to follow the vehicle and observed the vehicle travel left of the centerline. Deputy Robbins activated his emergency lights and performed a vehicle stop.

8.     Deputy Robbins approached the vehicle, identified himself and explained the reason for the traffic stop. The driver, identified as Joseph JAMES, stated that he did not have his driver's license on his person. Deputy Robbins then asked the passenger for his identification, which revealed his identity to be DaJohn ALEXANDER of Los Angeles, California. In conducting law enforcement database queries on JAMES and ALEXANDER, Deputy Robbins noted that JAMES was on State of Arkansas probation and subject to a search waiver. At around this time, Deputy Deppner arrived on-scene and assisted Deputy Robbins with the traffic stop. Based upon the search waiver for JAMES, Deputies Robbins and Deppner asked JAMES and ALEXANDER to exit the vehicle. JAMES and ALEXANDER complied with the deputies' request.

9.     Upon searching the vehicle, Deputy Robbins located a black backpack behind the driver's seat on the floorboard. Deputy Robbins opened the bag and observed

some clothing near the top; however, below the clothing he discovered a large vacuum-sealed bag. Deputy Robbins recognized the packaging to be used by individuals attempting to traffic illegal drugs without detection. Deputy Robbins and Deputy Deppner detained JAMES and ALEXANDER. At this point, Deputy Robbins removed the vacuum-sealed package, cut it open to access the contents and performed a field-test of the contents using a drug test kit. The test revealed the contents possessed the characteristics of methamphetamine. Deputy Robbins placed the illegal drugs in a brown paper bag and secured it as evidence.

10. Contemporaneous to the search being conducted by Deputy Robbins, Deputy Deppner engaged ALEXANDER in a casual conversation. During the conversation, ALEXANDER stated that he flew to Northwest Arkansas from Los Angeles, California. ALEXANDER stated that the purpose of his trip was to visit family members who lived in the Northwest Arkansas area; however, ALEXANDER was unable to tell Deputy Deppner which specific city his family members lived. Moreover, ALEXANDER claimed that he had been unable to contact his family since he arrived in Northwest Arkansas. As such, according to ALEXANDER, he asked a passer-by (JAMES) for a ride to a hotel near the airport. Deputy Deppner asked ALEXANDER why he was staying a hotel instead of with family. ALEXANDER replied that his family members did not live close to the area. ALEXANDER added that he planned to visit the area for approximately one week; although, according to Deputy Deppner, ALEXANDER did not exactly how long he intended to stay.

11. Pursuant to the discovery made by Deputy Robbins, ALEXANDER was placed under arrest. Located in ALEXANDER's possessions, law enforcement discovered a LG cellular telephone (SUBJECT TELEPHONE). The SUBJECT

TELEPHONE was seized pending the issuance of the requested search warrant. The cellular telephone is currently in the custody of Homeland Security Investigations in Fayetteville, Arkansas.

12. On June 26, 2019, Benton County Sheriff's Office Detective R. Gauert contacted the Northwest Arkansas Regional Airport Police Department (XNA PD) concerning ALEXANDER. Detective Gauert provided XNA PD with a photograph of ALEXANDER. XNA PD later reported that ALEXANDER flew on a direct from Los Angeles, California aboard American Airlines flight 6069, which arrived in Northwest Arkansas at approximately 11:51 pm. On June 27, 2019, Detective Gauert traveled to the Northwest Arkansas airport and viewed surveillance footage ALEXANDER's reported arrival. In doing so, Detective Gauert observed ALEXANDER disembark the American Airlines flight with the bag that was found to contain the methamphetamine.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or

hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

16. Based upon the foregoing, including the information provided by the confidential source, the observations made by investigators, and the evidence collected, your Affiant believes that evidence, fruits, and instrumentalities of criminal activity in violation of Title 21 United States Code, Sections 841(a)(1) and 846, specifically those

items detailed in Attachment B, currently exists on the property identified in Attachment A.

Respectfully submitted,

_____
Jeffrey Pryor
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on January 16, 2020

_____
Hon. Erin L. Wiedemann
United States Magistrate Judge